Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Cindy Chan (SBN 247495)
cchan@blakelylawgroup.com
BLAKELY LAW GROUP
915 North Citrus Avenue
Los Angeles, California 90038
Telephone: (323) 464-7400
Facsimile: (323) 464-7410

*Attorneys for Plaintiff
Hardy Way, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARDY WAY, LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> CVS PHARMACY, INC., a Rhode Island Corporation; TOSHI'S LOBBY SHOP, INC., a California Corporation; TOSHI NAKAJIMA, an individual; JOLIE FASHION GROUP, an unknown business entity; GEORGE PAI, an individual; DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. CV 10-9451 DDP (PJWx) <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES:** <br><br> 1. **FEDERAL TRADEMARK INFRINGEMENT;** <br> 2. **FALSE DESIGNATIONS OF ORIGIN AND FALSE DESCRIPTIONS** <br> 3. **FEDERAL TRADEMARK DILUTION;** <br> 4. **TRADEMARK DILUTION UNDER CALIFORNIA LAW;** <br> 5. **COMMON LAW UNFAIR COMPETITION;** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Hardy Way, LLC for its claims against Defendants CVS Pharmacy, Inc., Toshi's Lobby Shop, Inc., Toshi Nakajima, Jolie Fashion Group, and George Pai (collectively "Defendants") respectfully alleges as follows:

/ / /

/ / /

## JURISDICTION AND VENUE

1. Plaintiff files this action against Defendants for trademark infringement and trademark dilution under the Lanham Trademark Act of 1946, 15 U.S.C. §1051 et seq. (the "Lanham Act"), and related claims of unfair competition and trademark dilution under the statutory and common law of the state of California. This Court has subject matter jurisdiction over the Federal trademark counterfeiting and infringement and trademark dilution claims pursuant to 28 U.S.C.A §§1121(a), 1331, 1338(a).

2. This Court has subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C.A § 1367, since those claims are related to and arise from the same set of facts as Plaintiff's trademark infringement claims.

3. This Court has personal jurisdiction over Defendants because Defendants do business within this judicial district, and the acts complained of occurred in this judicial district.

4. This action arises out of wrongful acts by Defendants within this judicial district. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the claims asserted arise in this district.

## THE PARTIES

5. Plaintiff Hardy Way, LLC is a limited liability company organized and existing under the laws of the state of Delaware, with an office and place of business in New York, New York.

6. Upon information and belief, Defendant CVS Pharmacy, Inc. is a corporation organized and existing under the laws of the state of Rhode Island with an office and principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.

7. Upon information and belief, Defendant Toshi's Lobby Shop, Inc. is a corporation organized and existing under the laws of the state of California with an office and principal place of business at 225 Beloit Avenue, Los Angeles, California 90049.

8. Upon information and belief, Defendant Toshi Nakajima is an individual residing in this judicial district and/or doing business at Toshi's Lobby Shop, Inc.

9. Upon information and belief, Defendant Jolie Fashion Group is an unknown business entity with an office and principal place of business at 5410 Valley Boulevard, Los Angeles, California 90032.

10. Upon information and belief, Defendant George Pai is an individual residing in this judicial district and/or doing business at Jolie Fashion Group.

11. Plaintiff is unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sue them by their fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believe, and based thereon allege, that said Defendants and DOES 1 through 10, inclusive, are in some manner responsible for the wrongs alleged herein, and that at all times referenced each was the agent and servant of the other Defendants and was acting within the course and scope of said agency and employment.

12. Plaintiff is informed and believe, and based thereon allege, that at all relevant times herein, Defendants and DOES 1 through 10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior. Plaintiff further alleges that Defendants and DOES 1 through 10, inclusive, had a non-delegable duty to prevent or cause such acts and the behavior described herein, which duty Defendants and DOES 1 though 10, inclusive, failed and/or refused to perform.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**A.   The Ed Hardy® Brand**

13. The Ed Hardy® brand was launched in 2004 when its founder, Christian Audigier, received the exclusive license to the designs of Don Ed Hardy, who is commonly referred to as the "Godfather of Tattoo."

1  14. Plaintiff Hardy Way, LLC is the worldwide owner of the DON ED
2  HARDY and ED HARDY stylized and non-stylized trademarks, as well as the LOVE
3  KILLS SLOWLY logo (hereinafter collectively "Ed Hardy Marks").
4  15. The Ed Hardy Marks appear on a variety of products, including but not
5  limited to apparel, shoes, hats, eyewear, jewelry, beverages, home goods, skateboards,
6  mobile digital content, fragrances, tanning products, golf carts, electronics, toys,
7  computer supplies, umbrellas, and limited edition Smart Cars since at least as early as
8  2004. There are currently approximately 52 licenses for products bearing the Ed
9  Hardy Marks.
10  16. All Ed Hardy-branded products, and their corresponding packaging,
11  prominently bear the Ed Hardy Marks.
12  17. Ed Hardy® clothing is sold throughout the United States and throughout
13  the world, including France, Mexico, Denmark, Korea, Japan, Thailand, Taiwan,
14  Singapore, South Africa, Australia, Dubai, Czech Republic, Germany, New Zealand,
15  and Malaysia, as well as in major retail department stores such as Macy's, Nordstrom
16  and Bloomingdale's.
17  18. In less than ten years, Ed Hardy-branded products have come to be
18  internationally recognized for their trendy style combined with cutting edge and
19  distinctive tattoo art.
20  19. Celebrities such as Fergie, Heidi Klum, David Beckham, Sylvester
21  Stallone, Paula Abdul, Kim Kardashian, Paris Hilton, Madonna, Shakira and Britney
22  Spears can all be seen wearing Ed Hardy® clothing. The celebrity following of Ed
23  Hardy® products includes hundreds of celebrities, athletes and musicians of all genres.
24  20. Hardy® apparel has been praised and recognized in numerous articles
25  appearing in both trade publications and publications directed to the general public,
26  including but not limited to People, Life & Style, Star Magazine, InStyle, Caras
27  Internacional, Voici, Hello Magazine, L'Expansion, 944, and Hip Hop Weekly.
28

21.     In 2008, over $400 million in Ed Hardy® goods had been sold at wholesale worldwide and over $12 million had been spent on advertising and promoting the brand.

22.     One of the most well recognized Ed Hardy Marks is the Skull Mark, which consists of a skull and heart with a banner that reads "LOVE KILLS SLOWLY" (see below)



23.     The Skull Mark was first used in commerce as early as 2005 and was registered with the United States Patent and Trademark Office on June 9, 2009 (U.S. Reg. No. 3,635,990)

24.     Due to their long use, extensive sales, and significant advertising and promotional activities, the Ed Hardy Marks have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. The arbitrary and distinctive Ed Hardy Marks identify, in the United States and throughout the world, a fashion brand known for its trendy style combined with cutting edge tattoo art designs.

**B.  Defendants' Infringing Conduct**

25.     Upon information and belief, Defendant CVS Pharmacy, Inc. ("CVS") is the largest pharmacy health care provider in the United States. As of September 2010, CVS operated 7,152 retail stores, including within the state of California.

26.     During the Fall of 2010, products bearing counterfeit reproductions of the Skull Mark ("Infringing Products") were obtained from a CVS pharmacy located in Los Angeles, California.

27. Plaintiff's representatives have inspected samples of the Ed Hardy-branded merchandise obtained from CVS, and have determined said merchandise to be counterfeit.

28. CVS purchased the Infringing Products from Defendant Toshi's Lobby Shop, Inc. ("Toshi's") via its principal, Defendant Toshi Nakajima.

29. Upon information and belief, the distributor, importer, manufacturer, and/or supplier of the Infringing Products is Defendant Jolie Fashion Group.

30. Upon information and belief, Defendant George Pai is the owner of Jolie Fashion Group.

31. Upon information and belief, the individual defendants herein named are the active, moving, conscious forces behind the alleged infringing activities.

32. None of the named Defendants are authorized by Plaintiff to manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing any of the Ed Hardy Marks.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement)

33. Plaintiff incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

34. The Skull Mark is nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality and coming from Plaintiff.

35. Defendants' unauthorized use of the Skull Mark in interstate commerce and advertising relating to same constitutes false designation of origin and a false representation that the goods and services are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiff or come from the same source as Plaintiff's goods and are of the same quality as that assured by the Ed Hardy Marks.

36. Defendants' use of the Skull Mark is without Plaintiff's permission or authority and in total disregard of Plaintiff's rights to control its trademarks.

37. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or are otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiff.

38. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill associated with Plaintiff's trademarks.

39. Defendants' acts violate the Lanham Act.

40. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to their businesses and reputations unless Defendants are restrained by this Court from infringing Plaintiff's trademarks.

41. Plaintiff has no adequate remedy at law.

42. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the Skull Mark, or any mark identical and/or confusingly similar thereto, for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## SECOND CLAIM FOR RELIEF

### (False Designations of Origin and False Descriptions)

43. Plaintiff incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

44. The Skull Mark is nonfunctional and its inherently distinctive quality has achieved a high degree of consumer recognition and serves to identify Plaintiff as the source of high-quality goods.

45. Defendants' unauthorized use of the Skull Mark on merchandise in interstate commerce and advertising relating to same constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiff or come from the same source as Plaintiff's goods when, in fact, they do not.

46. Defendants' use of the Skull Mark is without Plaintiff's permission or authority and in total disregard of Plaintiff's rights to control their trademarks.

47. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or are otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiff.

48. Upon information and belief, the individual Defendants herein named were active, moving, conscious forces behind the alleged infringing activities.

49. Plaintiff has no adequate remedy at law.

50. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the Skull Mark, or any mark confusingly similar thereto, and to recover all damages, including attorneys' fees, that Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, as well as the costs of this action.

## THIRD CLAIM FOR RELIEF

### (Trademark Dilution in Violation of Lanham Act)

51. Plaintiff incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

52. The Skull Mark is "famous" within the meaning of the Lanham Act.

53. Defendants have used in commerce in connection with the sale of their products counterfeit reproductions of the Skull Mark, which is likely to cause, and most likely has caused, confusion or mistake as to the affiliation, connection, or association between Defendants and Plaintiff, or as to the origin, sponsorship, or approval of said counterfeit goods by Plaintiff.

54. Defendants' acts described above have diluted and continue to dilute the unique and distinctive Skull Mark. These acts violate the Lanham Act, have injured and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial, as well as irreparable injury to the goodwill and reputation associated with the Skull Mark.

55. Upon information and belief, Defendants' unlawful actions began long after Plaintiff's Skull Mark became famous.

56. Upon information and belief, Defendants acted knowingly, deliberately and willfully with the intent to trade on the reputation of the Ed Hardy® brand, and to dilute the Skull Mark. Defendants' conduct is willful, wanton and egregious.

57. Upon information and belief, the individual Defendants herein named were active, moving, conscious forces behind the alleged infringing activities.

58. Plaintiff has no adequate remedy at law to compensate them fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

59. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the Skull Mark, and to recover all damages, including attorneys' fees, that Plaintiff has sustained and will sustain, and all gains,

1 | profits and advantages obtained by Defendants as a result of their infringing acts
2 | alleged above in an amount not yet known, as well as the costs of this action.

### FOURTH CLAIM FOR RELIEF

**(Trademark Dilution in Violation of Cal. & Bus. Prof. Code)**

60. Plaintiff incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

61. The Skull Mark is distinctive in the state of California by virtue of their substantial inherent and acquired distinctiveness, extensive use in the state of California and the extensive advertising and wide spread publicity of the marks in the state of California.

62. As a result of the substantial inherent and acquired distinctiveness of the Skull Mark, their extensive use in the state of California, and the extensive advertising and publicity of said marks in the state of California, Plaintiff's Skull Mark has become strong and is widely renowned.

63. The actions of Defendants complained of herein are likely to injure the business reputations and dilute the distinctive quality of the Skull Mark, which is famous.

64. The foregoing acts of Defendants constitute dilution and injury to business reputations in violation of the California Business and Professions Code.

65. The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiff in reckless disregard of Plaintiff's rights. Said conduct was despicable and harmful to Plaintiff and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the Defendants, and to deter them from similar such conduct in the future.

66. Upon information and belief, the individual Defendants herein named were active, moving, conscious forces behind the alleged infringing activities.

67. By reason of the foregoing, Plaintiff is being damaged by Defendants' unauthorized and illegal use of the Skull Mark in the manner set forth above, and will

continue to be damaged unless Defendants are immediately enjoined under Section 14247 of the California Business and Professions Code from using any of the Ed Hardy Marks.

68.  Plaintiff will be irreparably injured by the continued acts of Defendants, unless such acts are enjoined.

69.  Plaintiff has no adequate remedy at law.

70.  In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the Skull Mark for any purpose, destruction of the counterfeit merchandise, and recovery of up to three times their profits from, and up to three times all damages suffered by reason of, Defendants' wrongful manufacture, use, display, or sale of infringing products.

## FIFTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

71.  Plaintiff incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

72.  Plaintiff owns and enjoys common law trademark rights to the Ed Hardy Marks, including the Skull Mark, in California and throughout the United States.

73.  Defendants' unlawful acts in appropriating rights in Plaintiff's Skull Mark were intended to capitalize on Plaintiff's goodwill associated therewith for Defendants' own pecuniary gain.  Plaintiff has expended substantial time, resources and effort to obtain an excellent reputation for their respective brands.  As a result of Plaintiff's efforts, Defendants are now unjustly enriched and are benefiting from property rights that rightfully belong to Plaintiff.

74.  Defendants' unauthorized use of the Skull Mark has caused and is likely to cause confusion as to the source of Defendants' products, all to the detriment of Plaintiff.

75.  Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Plaintiff.

76. Defendants' acts constitute unfair competition under California common law.

77. Plaintiff has been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' unlawful acts unless Defendants are permanently enjoined from their unlawful conduct.

78. The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiff in reckless disregard of Plaintiff's rights. Said conduct was despicable and harmful to Plaintiff, and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the Defendants, and to deter them from similar such conduct in the future.

79. Plaintiff has no adequate remedy at law.

80. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the Skull Mark, and to recover all damages, including attorneys' fees, that Plaintiff has sustained and will sustain and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, as well as the costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants, as follows:

1. Granting temporary, preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

   (a) Using any of the Ed Hardy Marks, or any other marks confusingly similar thereto, in connection with the manufacturing, distribution, advertising, offering for sale, and/or sale of merchandise;

   (b) Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by,

1 | authorized by, offered by, produced by, sponsored by, or in any other way associated
2 | with Plaintiff;
3 |     (c)    Otherwise infringing upon Plaintiff's Ed Hardy Marks;
4 |     (d)    Otherwise diluting Plaintiff's Ed Hardy Marks;
5 |     (e)    Unfairly competing with Plaintiff;
6 |     2.    Ordering an accounting by Defendants of all gains, profits and advantages
7 | derived from their wrongful acts;
8 |     3.    Ordering Defendants to disgorge their profits;
9 |     4.    Awarding Plaintiff all of Defendants' profits and all damages sustained by
10 | Plaintiff as a result of Defendants' wrongful acts, and such other compensatory
11 | damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C.
12 | § 1117(a);
13 |     5.    Awarding treble damages in the amount of Defendants' profits or
14 | Plaintiff's damages, whichever is greater, for willful infringement pursuant to 15
15 | U.S.C. § 1117(b);
16 |     6.    Awarding applicable interest, costs, disbursements and attorneys' fees,
17 | pursuant to 15 U.S.C. § 1117(b);
18 |     7.    Awarding Plaintiff's statutory damages pursuant to 15 U.S.C. §1117(c);
19 |     8.    All actual, consequential, and incidental financial losses, including but not
20 | limited to lost profits, according to proof, in a sum which exceeds the jurisdictional
21 | minimum of this Court, together with prejudgment interest;
22 |     9.    General damages against Defendants in a sum which exceeds the
23 | jurisdictional minimum of this Court, the exact amount of which will be proven at trial;
24 |     10.    Attorneys' fees and costs of suit;
25 | ///
26 | ///
27 | ///
28 | ///

11. Such other relief as may be just and proper.

Dated: February 7, 2011          BLAKELY LAW GROUP

By: _____
Brent H. Blakely
Cindy Chan
*Attorneys for Plaintiff Hardy Way, LLC*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all claims in this litigation.

Dated: February 7, 2011          BLAKELY LAW GROUP

By: _____
Brent H. Blakely
Cindy Chan
*Attorneys for Plaintiff Hardy Way, LLC*